### CHARLES HOOPER *v.* WILLIAM TAYLOR.

Where the defendant orally and in writing directed the plaintiff to gild picture frames delivered and to be delivered, and sent them to the plaintiff's shop for that purpose; *held*, that his oral declaration to a person in the plaintiff's employment, that the work done must not exceed $200, not communicated to the plaintiff, cannot operate to limit the plaintiff's right to recover the fair value of the work, in accordance with the written order.

The neglect of the plaintiff to object, at the trial, to the admission in evidence of such oral declaration, does not preclude him from insisting upon its insufficiency as a legal limitation of the effect of the written order.

THE plaintiff was a manufacturer of gildings.   In December, 1854, the defendant called upon him, stating that he was interested in some pictures owned by one Gates, and requested the plaintiff to gild the frames thereof at his, the defendant's, expense.   The plaintiff thereupon took from the defendant the following order, in writing:

Hooper *v.* Taylor.

"New York, December 16, 1854. Mr. Charles Hooper, Sir:—Please deliver to Mr. Gates about $200 worth of gilding, and charge the same to my account.

"WILLIAM TAYLOR."

The pictures were to come from number 600 Broadway, and were to be returned to that place. The plaintiff gilded two lots, and returned them, the charges therefor being $44 54 and $134 98, respectively. The defendant afterwards called at the plaintiff's place of business, and requested him " to go and do the balance of the frames ;" and it was shown that the defendant caused frames in addition to those first above referred to, to be sent to the plaintiff.

Before executing the work last mentioned, the plaintiff desired a further written order, which the defendant gave, as follows :

"New York, January 6, 1855. Mr. Hooper:—Please gild for me the frames delivered and to be delivered from the hall, 600 Broadway, and charge the same to my account.

· "WILLIAM TAYLOR."

This order was delivered at the defendant's store, to a clerk or bookkeeper of the plaintiff; but whether the latter called for it at the plaintiff's request, or at the defendant's instance, or otherwise, did not appear. The evidence, as returned by the justice, was, that at the time this order was given to the clerk, the defendant said to him, that the whole amount of work must not exceed $200 ; but that the clerk "did not speak good English, and perhaps did not understand."

The plaintiff proceeded under the second order, and gilded frames to the amount, with the sums already mentioned, of $373 75.

The Marine Court limited the plaintiff's recovery to $200, and he appealed to this court.

The evidence of the verbal declaration made by the defendant to the plaintiff's clerk, on handing him the second order, was received without objection at the trial.

*Peter T. Woodbury* and *Franklin H. Churchill*, for the plaintiff.

*Henry Morrison*, for the defendant.

By the Court. Woodruff, J.—The plaintiff proved by witnesses, who were not contradicted, that the defendant, in person, at the plaintiff's place of business, requested the latter " to go on and do the balance of the frames." He also produced and proved a second order, in writing, requesting him to gild the frames delivered and to be delivered. As the evidence showed that the frames, for the gilding of which this action is brought, had then been delivered, this order, beyond all controversy, embraced all the frames then in the plaintiff's possession received from 600 Broadway. Besides this, and what is to my mind quite conclusive, it is proved by a witness, who is wholly unimpeached, that the defendant himself sent the very frames, the gilding of which is in controversy, to the plaintiff.

The plaintiff's case stood thus upon this undisputed evidence. The defendant had himself sent the frames to the plaintiff's shop. He had requested him to go on and do the balance. He had, after he had sent the frames, sent or given to the plaintiff a written order to gild for him the frames which had been delivered, and the proof of the actual gilding and return of the frames is not controverted.

The evidence relied upon to overcome this case—laying out of view the testimony in relation to the time and manner of payment, upon which the court below found against the defendant's claim—is simply this, that " the plaintiff's clerk (also called bookkeeper) came into the defendant's office and the defendant gave him the second order ; at the same time he said to him, that the whole amount of work must not exceed the amount of the first order, $200. The defendant's bookkeeper does not talk good English, and perhaps did not understand."

Upon this statement by the plaintiff's witness, the court

below have limited the plaintiff's title to recover to the $200, although the gilding of the frames sent by the defendant himself to the plaintiff swelled the amount to a larger sum.

I think that this was an error, not merely in respect to the weight or preponderance of the testimony, but in regard to its proper legal effect upon the rights of the parties.

It did not appear that this parol declaration, said to have been made to the plaintiff's bookkeeper, was ever communicated to the plaintiff. It is even stated by the witness himself to be doubtful, whether the bookkeeper, who did not speak English well, correctly understood it. It did not appear that the bookkeeper was at the defendant's store on the plaintiff's business, or in pursuance of any authority or direction from the plaintiff. I cannot think it just, or that the law requires that, because the defendant made the plaintiff's bookkeeper his own messenger to carry his written order to the plaintiff, the plaintiff is, therefore, legally chargeable with notice of the oral qualification alleged to have been stated to the bookkeeper, when it does not appear to have ever come to his knowledge. On the contrary, on the receipt of the written order, the plaintiff had a right to rely upon the writing; and though the defendant might, doubtless, afterwards revoke it before it was acted upon, he was bound to bring that revocation home to the plaintiff, by proof that it was communicated, either to him or to some one who was acting for him, in the very business to which it related. Suppose he had met one of the plaintiff's clerks in the street, before any gilding had been done under the second order, and had told him that he had changed his mind and did not wish the work done. He could not so make the clerk his messenger to the plaintiff as to charge him with notice of a revocation, unless he showed that his message was delivered.

This view of the subject assumes the truth of what the defendant's witness testified, and proceeds not at all upon the question of the weight of the testimony, but of its legal effect, assuming its truth.

Besides, it is not clear that the omission to object to the

evidence—though it seems to me to have been clearly inadmissible—has any further operation than to admit, for the purposes of the case, that it was competent. The question, how far such a conversation, cotemporaneous with the signing of the written paper, may legally operate in a court of law to limit the legal effect of the writing, still remains ; and I think that the defendant's counsel had a right to require the court to hold that such a conversation had no such effect, but that the writing should have been deemed conclusive, certainly until proof was given that the plaintiff had notice.

Judgment reversed.